UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | > | CASE NO.: 2:94 CR 0012713 |
| Plaintiff. | > | |
| | > | |
| v. | > | |
| | > | |
| SALVATORE BRUNETTI | > | |
| Defendant. | > | |
| | > | |

TIME-SENSITIVE SUPPLEMENTAL MEMORANDUM
AND MOTION FOR REQUEST FOR IMMEDIATE RELEASE
IN LIGHT OF HEIGHTENED RISK FOR COVID-19

HONORABLE JUDGE BUCKWALTER, I, Salvatore Brunetti, through
Pro-Se counsel, submits this Time-Sensitive Motion in support
of a Reduced Sentence be converted to Home Confinement based on
the alarming rate of the COVID-19 Pandemic that is spreading
rapidly through F.C.I. Fort Dix where the Defendant is housed.

Mr. Brunetti will be turning 73 years old in July. He has
served over 27 years in prison, barely surviving his last major
operation on his chest which has put a major strain on his
respiratory system and puts him as a High-Risk Inmate. His
life-threatening ailments and medical history (which are detailed
in full in this Motion) show that his current circumstances of
being incarcerated in this environment could be a life ending
situation for a person punished only to have restrictive
liberty, not exposure to illness that could result in death.

PETITION FOR COMPASSIONATE RELEASE
PURSUANT TO 18 U.S.C. § 3582(C)(1)(A)
and THE FIRST STEP ACT, SEC. 603(B)


This Time-Sensitive Compassionate Release Motion comes to the attention of this Court at a time-of-the-essence period because the COVID-19 Virus is rapidly getting absorbed in the large inmate population here at F.C.I. Fort Dix. Based on the postings on the B.O.P. website, the number are increasing in prison populations, not declining like populations in the free world outside of prison. This is because the prisoners are really living in a human Petri dish and at any time this virus could be right in Mr. Brunetti's face which could easily change his health status from a current Chronic Care Inmate to a fatal statistic.

Although the First Step Act (P.L. 115-391), Sec. 603(B) now allows all Federal Courts to directly reduce sentences under the statutory provisions of Title 18 U.S.C. ll 3582(C)(1)(A) without awaiting a Motion from the Bureau of Prisons, the Petitioner made an approach to the Bureau of Prisons as advised by the Office of the Warden at the Institutional level and was denied (See: Attached).


I.  JURISDICTION

The First Step Act (P.L. 115-391), Sec. 603, amended § 3582(C)(1)(A) to permit defendants to now move a Sentencing Court for modification of their sentence. Federal courts have jurisdiction pursuant to Title 28 U.S.C. § 1331.

2

II. <u>STATEMENT OF FACTS</u>

The coronavirus pandemic is an ongoing health emergency. The outbreak of coronavirus (COVID-19) was identified in Wuhan, China, in December 2019, and declared to be a Public Health Emergency of International Concern, on January 30, 2020. (<u>See</u>: "Statement, International Health Regulations Emergency Committee, 20 January, 2020.)  On January 31, 2020, President Donald Trump declared a Public Health Emergency in the United States.

As of April 13, 2020, more than 1.85 million cases of COVID-19 have been reported in 210 countries and territories resulting in more than 114,000 deaths.  (<u>See</u>: COVID-19 Global Cases, Center for Systems, Science, and Engineering, John Hopkins University, 13 April, 2020.)  By March 26, 2020, the U.S. had overtaken China and Italy with the highest number of confirmed cases globally.

The virus is mainly spread between people during close contact.   Recommended preventative measures include maintaining distance from one another.  (<u>See</u>: "Modes of Transmission," World Health Organization, 29 March, 2020.)  The European Center for Disease Control (ECDC) states that while it is not entirely clear how easily the disease spreads, one person generally infects two to three others (ECDC, 23 March, 2020).

3

Social distancing includes infection-control actions intended to slow the spread of disease by minimizing contact between individuals. The maximum gathering size is recommended by the U.S. Government bodies and health organizations is 10 people or less.

As of April 12, 2020, the B.O.P. reported 352 Federal inmates and 189 Federal Prison Staff had tested positive. A confirmed 40 Federal prisons are now infected with COVID''19 ''Bureau of Prisons, April 12, 2020).**

**During the process of putting this Motion together and the submission to the Court, any statistics used in this Motion are dated since information is delayed within prison barriers. However, the Petitioner strongly urges this Court to simply pull up the current data and it will 100 % reflect alarmingly increased numbers overall in the wild-fire spread of the COVID-19 Virus that has now uncontrollably infected inmates and staff members, the death rates has also soared to staggering numbers.

III <u>PETITIONERS MEDICAL HISTORY</u>

Mr. Brunetti is approaching 73 years old this coming July. He has been under the B.O.P.'s medical care for the past twenty seven (27) years. His medical history records are as thick as a Leo Tolstoy novel.

Mr. Brunetti has recently undergone major chest surgery to remove a 4.5 x 3.5 centimeter mass located in the center of his chest, under the sternum to remove the mass pressing on his heart and lungs. His sternum had to be broken to get to the mass. The mass was found to be pressing on his pericardia sack. Though the surgery was completed, Mr. Brunetti was never informed by the surgeon nor F.C.I. Fort Dix medical what the final prognosis is. Yet Mr. Brunetti is still having some of the pre-surgery symptoms like shortness of breath, pain in the center of his chest.

4

Mr. Brunetti also suffers from PPC's (Pre-Ventricular Contractions) of his heart. In addition, he has hypertension, he is routinely sent out to get his eye drained from recently having a systemic stroke in his retina which limits his vision. He has also had several surgeries on his right hand and has yet to be corrected. He could list many more ailments which are all documented in his medical file. But the main concern is that like his hand surgery and also the surgery for the mass pressing on his pericardi sack, along with his systemic stroke of the eye, if Mr. Brunetti would have been a regular citizen and not an inmate most of these major medical problems that he has would of been treated and under controll. But because he is under the care of the B.O.P. medical system which only really takes medical situations seriously when it is too late.

Mr. Brunetti did not get a life sentence, but here he is in a quagmire. All of his medical issues put a daily major strain on his respiratory system. If he were to be exposed to the COVID-19 virus, this would compromise his health and could lead to death. The longer he stays in this environment, his life is at risk.

IV   <u>CONDITIONS AT F.C.I. FORT DIX</u>

The facility at Fort Dix is located inside the Joint Military Base Maguire, Fort Dix, Lakehurst, in Burlington County, New Jersey. New Jersey has been identified as a "hot spot" for the COVID-19 virus. Already Fort Dix staff members and inmates have been tested for the coronavirus.

5

In a memo to the inmate population (Apr. 11, 2020), FCI Fort Dix Warden David Ortiz stated: "Social distancing is not possible in this environment." On April 3, 2020, a memorandum was issued to the inmate population at FCI Fort Dix from C. Barton, RN, QI/IP&C entitled "COVID-19 Update" and stated:

> Please be advised, there are six inmates who have tested positive for COVID-19. All the offenders who tested positive have been placed in isolation, where they are receiving treatment.

In an April 16, 2020 memo, Warden Ortiz stated: "COVID-19 ... is easily transmitted from one person to another ... it can be transmitted by a person who has no symptoms at all."

It is unknown to what extent the six inmates in isolation had contact with the general population. Though no memo has been issued since, the number of isolated inmates has increased since April 13, 2020.

BOP inmate deaths thus far have occurred at low-security prisons and prison camps -- institutions such as Oakdale, Butner, Elkton, and Danbury -- facilities that have dormitory-style housing where social distancing, as Ortiz states, "is impossible."

Because of the unique housing arrangements at Fort Dix, which were not built as prison housing and filled beyond the building's designed capacity, inmates at Fort Dix are at an increased risk.

6

"It is incumbent upon prison officials ... to maintain as sanitary an environment for the inmates as feasible, given the difficulties of the circumstances."

Hudson v. Palmer, 488 U.S. 517, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984).

In Ramos v. Lamm, 639 F.2d. 599 (10th Cir. 1980), it was determined that the Eighth Amendment protection is, inter alia

intended to protect and safeguard a prison inmate from an environment where degeneration is probable and self-improvement unlikely because of the conditions existing which inflict needless physical suffering. An inmate is entitled to be confined in an environment which does not threaten his physical well-being.

In Ramos, emphasis is placed on sanitation and medical care:

It is incumbent on the prison authorities to provide the inmate with a healthy, rehabilitative environment, and must provide within such living space reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities. In short, the prison must provide an inmate with shelter which does not threaten his physical well-being.

(See: Ramos, 639 F.2d. @ 559, h.n.)

7

These unsanitary conditions are made more dangerous, under current advisories for the coronavirus, because of the issues of overcrowding specific to Fort Dix.

According to BOP <u>Program Statement 1060.11</u>:

> "The square footage measurement for multiple occupancy housing areas is determined by measuring the entire <u>open dorm</u> or <u>living area</u> and includes hallways and walkways."

Page 5, ¶ 3(b) - Low Security - Multiple Occupancy Housing Areas - states that:

> "If [an area is] 120 square feet or more, rated capacity is computed by dividing the total space of each <u>sleeping area</u> or <u>unit</u> by 60 square feet."

Therefore, every inmate is entitled to 60 square feet of living space in his <u>sleeping area</u>. The formula for calculating the square footage per inmate, as applied to FCI Fort Dix, NJ, does not include the TV rooms and other areas that are in a separate part of the building from the <u>sleeping area</u>, and are separated by fire and security doors. To hold otherwise would effectively allow the BOP to include other areas such as the recreation yard that is clearly not part of the "<u>living area</u>," which could not withstand constitutional scrutiny.

8

The Fifth Circuit has held that, "excluding bathing, toilet, and activity areas ... [a prison] must calculate its permissible overall population on the basis of sixty square feet per dormitory prisoner." Ruiz v. Estelle, 666 F.2d. 854, 857 (5th Cir. 1982) (emphasis provided).

Although prisoners are, undeniably, sent to prison as punishment, the prison environment itself may not be so brutal or unhealthy as to be in itself a punishment. See: Battle v. Anderson, 564 F.2d. 388, 395 (10th Cir. 1977).

"While overcrowding itself may not be a violation of the Eighth Amendment, overcrowding can, under certain circumstances, cause unsanitary conditions, high levels of violence, or lack of sufficient medical and psychiatric care, which violate the Eighth Amendment." See: Brown v. Plata, 131 S. Ct. 1910, 179 L. Ed. 2d. 969, 2011 U.S. LEXIS 4012, decided May 23, 2011.

The BOP is accredited by the American Correctional Association. To maintain this accreditation, ACA requires the BOP to provide, at a minimum, 60 square feet of living space per inmate who spend no more than ten hours per days in their living quarters. This is not the case at FCI Fort Dix.

FCI Fort Dix houses (12) prisoners in a 529 square feet room, which translates to 44 square feet per inmate, or 16 square feet short of the minimum ACA requirement.

9

Inmates sleep five feet apart and above and below one another, in close quarters with no room to spare. Common areas are cramped and lack proper ventilation. The buildings original windows have been reduced in size by at least 50% and prisoners are forced to live in close proximity to one another.

The Court in <u>DeShaney v. Winnebago Soc. Serv.</u>, 489 U.S. 189, 199-200 (1989) found that:

> "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. See: <u>Youngberg v. Romeo</u>, supra, at 317, 73 L. Ed. 2d. 28, 102 S. Ct. 2452.

"The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs -- e.g., food, clothing, shelter, medical care, and reasonable safety -- it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause." <u>See</u>: <u>Estelle v. Gamble</u>, supra, at 103-104, L. Ed. 2d. 251, 97 S. Ct. 285; <u>Youngberg v. Romeo</u>, supra, at 315-316, 73 L. Ed. 2d. 28, 102 S. Ct. 2452.

10

Prolonged isolation in dehumanizing conditions ... severe overcrowding, and unsanitary conditions have all been found to be cruel and unusual under contemporary standards of decency. <u>See</u>: <u>Hutto v. Finney</u>, 437 U.S. 678, 57 L. Ed. 2d. 522, 98 S. Ct. 2565 (1978) (prolonged isolation in unsanitary, overcrowded cell); <u>Ramos v. Lamm</u>, 639 F.2d. 559 (10th Cir. 1980) (overcrowding, sanitation).

It is specifically overcrowding that causes a host of potentially serious health and safety issues. Those issues inherently pose a threat to the orderly running of the institution, given the recent global outbreak of COVID-19.

It is the BOP's own negligence that has caused these problems which result from the underlying issue of overcrowding. According to <u>Johnson v. Levine</u>, 588 F.2d. 1378, 1380-1381 (4th Cir. 1978), "Overcrowding, with all its consequences, can reach such proportions that the impact of the aggregated effect amounts to cruel and unusual punishment." This is especially true when facing the social distancing recommendations for COVID-19. Unlike at home where individuals can shelter-in-place and self-quarantine to avoid contamination, the prison at Fort Dix creates instead a breeding ground for the virus.

The risks faced by the inmates who are unfortunate enough to contract the virus are grave, as the prison's resources do not stretch to administering care for those infected by COVID-19.

11

VII  <u>CONCLUSION</u>:

Attorney General William Barr has observed:

> There is no constitutional or
> statutory authority for the
> Department of Justice to play
> roulette with people's lives
> because of their offense or
> conviction. Imprisonment is
> is meant to punish by restricting
> liberty, not exposure to illness.

With all of the factors considered that Mr. Brunetti is exposed to these dangerous conditions at F.C.I. Fort Dix which both exacerbate the potential for the spread of the disease, and make avoiding contamination through social distancing impossible in this environment Mr. Brunetti the Petitioner respectfully requests a consideration for Compassionate Release.

Respectfully Submitted,

SALVATORE BRUNETTI
F.C.I. FORT DIX
P.O. BOX 2000
JOINT BASE - MDL, N.J.
08640

12

VII <u>REENTRY PLAN</u>:

Mr. Brunetti will live with his brother Frank Marche who
resides 127 Barcroft Drive, Cherry Hill, N.J. 08034. His phone
number is 609-504-5270. Mr. Marche will help Mr. Brunetti
financially so he can get on his feet and provide him with a
safe environment.


VII <u>CONCLUSION</u>:

Attorney General William Barr has observed:

> There is no constitutional or statutory authority
> for the Department of Justice to play roulette
> with people's lives because of their offense or
> conviction. Imprisonment is meant to punish by
> restricting liberty, not exposure to illness.

With all of factors considered that Mr. Brunetti is
exposed to these dangerous conditions at F.C.I. Fort Dix which
both exacerbate the potential for the spread of the disease,
and make avoiding contamination through social distancing
impossible in this environment.

Mr. Brunetti has served twenty seven (27) years of his
sentence which is over two-thirds ( 2/3 rd's) . Taking into
consideration of his age, decling health and a rated as a low
security inmate, Mr. Brunetti is respectfully requesting this
court for a Compassionate Release consideration so he can
serve the remaining time under Home Confinement.

Respectfully Submitted,

SALVATORE BRUNETTI
F.C.I. FORT DIX
P.O. BOX 2000
JOINT BASE - MDL, N.J.
08640

13

Salvatore Brunetti
07781-062
P.O. Box 2000
F.C.I. Fort Dix N.J. 08640

U.S.M.S
X-RAY

7018 0360 0001 56

ATTN: He

U.S. DISTR
EASTERN D
U.S. COUR
INDEPEND
601 MAR
PHILADEL
19106-17

7018 0360 0001 5621 6697

U.S.M.S.
X-RAY



U.S. DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
U.S. COURT HOUSE
INDEPENDENCE MALL WEST
601 MARKET STREET
PHILADELPHIA, PA.
19106-1797

ATTN: HONORABLE JUDGE BUCKWALTER

FEDERAL CORRECTIONAL INSTITUTION
P. O. BOX 2000
FORT DIX, NJ 08640 05/12-2020

closed letter was processed through special mail
ures. This letter has been neither opened nor
ed. If the writer raises a question or problem over
his facility has jurisdiction, you may wish to return
terial. If the writer encloses correspondence for
ing to another address or includes unauthorized
lease return to the above address.